UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JUDITH JEANETTE NEBLETT,<br><br>   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>   Defendant. | No. CV 14-01204-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

  This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

  Plaintiff raises the following issues:

  1. Whether the Administrative Law Judge ("ALJ") properly

```
               considered the treating physician's opinion; and
     2.    Whether the ALJ properly considered Plaintiff's testimony
           and made proper credibility findings.
```
(JS at 2.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY ASSESSED THE OPINION**

**OF TREATING PHYSICIAN DR. ORKIN**

Following a hearing on October 24, 2012, at which Plaintiff was present with counsel, and testified, and testimony was also received from a vocational expert ("VE") (AR 23-52), an unfavorable decision was rendered on November 9, 2012. (AR 9-19.) The ALJ followed the five step sequential evaluation process summarized in the decision (AR 10-11), determining at Step Two that Plaintiff has severe impairments consisting of the following: bipolar disorder; attention deficit hyperactivity disorder ("ADHD"); and a history of polysubstance abuse, in remission. (AR 12.) At the next step, the ALJ found that Plaintiff's impairments do not meet or equal any of the Listings, and he then determined that Plaintiff's residual functional capacity ("RFC") allows her to perform the full range of work at all exertional levels with the following non-exertional limitations: simple, repetitive tasks; no prolonged public contact; and solitary work not in coordination with others. (AR 13.) The ALJ found that Plaintiff could not perform her past relevant work, and thus proceeded to Step

2

Five, concluding that there are jobs that exist in significant numbers in the national economy that she can perform, thus rendering her not disabled. (AR 17-18.)

The record contains an April 3, 2012 "check the box" type of questionnaire entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)" completed by treating psychologist Dr. Orkin. (AR 282-283.) There, Dr. Orkin concluded that Plaintiff has "no useful ability to function" with regard to her ability to maintain attention for two-hour segments of time and her ability to complete a normal workday and workweek without interruptions from psychologically-baaed symptoms, or an ability to set realistic goals and make plans independently of others, an ability to deal with the stress of semi-skilled and skilled work. Dr. Orkin noted that Plaintiff has "severe ADHD" and Bipolar II Disorder, cannot maintain concentration or focus for more than five to ten minutes, and could be expected to miss more than four days of work per month due to her impairments. (AR 283.)

The ALJ rejected Dr. Orkin's conclusions, giving them "no weight" because they are "simply not supported by the objective medical findings or the longitudinal record." Plaintiff's first issue focuses on asserted error with regard to this conclusion.

Plaintiff first notes that she has consistently been diagnosed with bipolar disorder, and cites various portions of the record to substantiate this. (JS at 4.) This conclusion was not disputed by the ALJ, who in fact found that Plaintiff's bipolar disorder is a severe impairment. (AR 12.) Further, Plaintiff notes that, during separate mental health appointments, there are observations of a depressed or anxious mood, perceptual disturbances, restlessness, irritability, and feelings of hopelessness or worthlessness. (Id.) She also points to a

3

test that she indicates was designed to identify symptoms consistent with ADHD. (JS at 4-5, citing AR 291.)

Plaintiff disputes the ALJ's conclusion that Dr. Orkin "appears to have accepted the claimant's subjective complaints, and the above-noted opinions appear reflective of a position of 'advocate' for the patient." (JS at 5, citing AR 16.)

The Court must determine whether the ALJ's decision and conclusions are supported by substantial evidence in the record. Plaintiff has the burden to establish that she has a medically determinable severe impairment which ultimately causes her disability.

As noted, Plaintiff has been diagnosed with bipolar disorder, as evidenced in treatment notes in the record spanning the period 2006 to October 2012 (AR 208-230, 277-328); however, the Commissioner is correct in pointing out that these notes show that Plaintiff was stable when on medication, that her mental status examinations did not demonstrate cognitive deficits (AR 208-230, 277-328); that she did work (although sometimes on a part time basis) during this period (and in fact in October 2012 was currently working as a caregiver). (AR 32-33, 37-38, 41.) With regard to that position, Plaintiff told her therapist that she "loved" this job although she indicated to the ALJ that it was stressful and made her cry. (AR 37-38, 41, 299.)

Indeed, the ALJ's assessment of the longitudinal records reflects a thorough and fair reading of these documents. For example, on January 12, 2010, Plaintiff presented to her treating facility, Kaiser Permanente, with manic depressive symptoms, but indicated she was doing well and that she viewed her only problem as losing Kaiser Permanente health insurance. (AR 208.) During her mental status examination, her anxiety level was described as "calm in session," she

4

was alert and oriented, did not have suicidal ideations or overt psychotic symptoms. (AR 209.) Similar conclusions were reached in a mental status examination during a Kaiser Permanente visit on November 12, 2009. (AR 211-213.)

In sum, the longitudinal record that the ALJ examined does not demonstrate consistent or serious mental limitations. Indeed, at one point Plaintiff attended school for computer classes. Her activities of daily living were robust; she indicated she had friends at church, maintained good relations with her family, and enjoyed being with her grandchildren.

Further, Plaintiff was provided with a consultative psychiatric evaluation ("CE") on November 22, 2011 (AR 237-240), which indicated essentially benign and normal assessments. Considering that Dr. Orkin's conclusions essentially rendered him an outlier, the ALJ correctly discharged his function to weigh the evidence by examining the entire record in concluding that Dr. Orkin's opinions were not entitled to credibility. In any event, one of the least favored forms of medical opinion in the context of Social Security adjudications are "check the box" forms such as the one that was provided by Plaintiff's current counsel to Dr. Orkin. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196-1197 (9th Cir. 2004).

Finally, the ALJ allowed for mental limitations by assessing an RFC that limited Plaintiff to the performance of simple, repetitive tasks with no prolonged public contact, and solitary work not in coordination with others. (AR 13.)

Thus, the ALJ relied not only on the record, but also the conclusions of the CE, and the State Agency review physicians, who noted that Plaintiff did not have significant mental difficulties with

the exception of her ability to interact with the general public and maintain her concentration. (AR 15-16, 245-258, 259-262.)

All in all, the Court must respectfully disagree with Plaintiff's contention that the ALJ did not provide specific and legitimate reasons to depreciate or in fact entirely reject Dr. Orkin's conclusions.

## II

### THE ALJ PROPERLY CONSIDERED PLAINTIFF'S CREDIBILITY

In Plaintiff's second issue, she asserts the ALJ erred in depreciating her credibility as to subjective symptoms. During her testimony at the hearing before the ALJ, she stated she experiences some days on which she cannot get out of bed due to mental impairments; that she is extremely forgetful; and that she had difficulty completing tasks. (AR 34.) The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the determined RFC. In making this finding, the ALJ relied upon Plaintiff's activities of daily living ("ADL"); the conflict between Plaintiff's assertions and the objective medical evidence; the fact that these records also indicated that Plaintiff responded well to medication; and Plaintiff's own statements that she was doing well and only regretted losing her health insurance. (AR 14-15.)

For reasons to be stated, the Court concludes that the ALJ did find and cite to legitimate reasons to detract from Plaintiff's credibility as to her own assessment of her subjective symptoms.

With regard to Plaintiff's response to her medication, the ALJ's conclusion that Plaintiff was "very stable" on medication is borne out

by the records. (AR 14, 208-230, 277-328.) See Warre v. Commissioner of Social Security, 439 F.3d 1001, 1006 (9th Cir. 2006). Further, as the Court has noted, the longitudinal record of Plaintiff's treatment does not evidence the type of disabling symptoms that would substantially corroborate Plaintiff's subjective claims.

The ALJ must make specific credibility findings as mandated not only by case law but by regulation. (See Social Security Regulation ["SSR"] 96-7p.) The factors cited in the regulations are those which would be expected to be referenced in any credibility determination.

Plaintiff's part time work during the time she claims disability are a relevant factor considered alongside her routine daily activities. See McCalmon v. Astrue, 319 Fed.Appx. 658, 660 (9th Cir. 2009); Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009). As noted, during the hearing, Plaintiff indicated she was working as a personal caregiver, and as also noted, she had indicated to her medical professionals that she loved this job.

Plaintiff appeared to have a consistently good reaction to medications as reflected in mental status examinations that essentially indicated a normal level of mental functioning.

While Plaintiff claimed an inability to remember or to follow written or verbal instructions and finish tasks, at the same time, as the ALJ noted, she was able to look for work, obtain jobs and perform jobs that required a mental state beyond her determined ability to perform simple repetitive tasks with limited public contact and solitary work.

With regard to the ALJ's own observations of Plaintiff, while Plaintiff dismisses these as insignificant, and certainly the Court is

aware that "sit and squirm" jurisprudence is not acceptable, at the same time, an ALJ may rely upon his observations of a plaintiff's demeanor and functioning during a hearing as one factor in the credibility analysis. See Berduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

All in all, the Court must conclude that the credibility findings here are supported by substantial evidence and do meet the requirements set out by both regulation and the Ninth Circuit. Consequently, the Court rejects Plaintiff's second issue as without merit.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: August 21, 2014          /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE